Filed 4/13/22  Pham v. Nguyen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THUY PHAM, | H047433 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 17CV311664) |
| v. | |
| OLIVIA NGUYEN et al., | |
| Defendant and Appellant. | |

Olivia Nguyen (Olivia) and An Nguyen (An), defendants in this civil action, were married for at least 10 years.[1]  Olivia filed a petition for dissolution in or about October 2001 in the Superior Court, County of Orange (the Olivia/An proceeding).  A judgment of dissolution on reserved issues was entered in that proceeding on July 18, 2007.

On a date not disclosed in the record, An married plaintiff Thuy Pham (Pham).  In or about September 2007, An filed a dissolution proceeding relative to that second marriage in the Superior Court, County of Orange.  A judgment of dissolution was filed in November 2007, but was later set aside, except as to status.  In 2010, Pham filed a second dissolution proceeding involving An in the Superior Court, County of Santa Clara (the

---

[1] We refer to Olivia Nguyen and An Nguyen by their first names for convenience and clarity; we mean no disrespect in doing so.  (See *Rubenstein v. Rubenstein* (2002) 81 Cal.App.4th 1131, 1136, fn. 1.)

Pham/An proceeding). The present civil action, also in the Superior Court, County of Santa Clara, was filed by Pham against An and Olivia, and relates to an alleged fraudulent transfer of property in 2014.

In this civil action, Pham challenges a 2014 real estate transaction involving a vacation home jointly owned by An and Olivia located on N. Shore Drive in Fawnskin, California (Fawnskin Property or Fawnskin Home). In the 2007 dissolution judgment, An and Olivia had agreed that the Fawnskin Home would be sold with the proceeds divided equally. That property was never sold. In 2014, An transferred his interest in the Fawnskin Home to Olivia through a stipulation and order (the 2014 Stipulated Order) filed in the Olivia/An proceeding. That 2014 Stipulated Order modified their 2007 judgment. Pham alleged that the real estate transaction, which was completed by recording a June 13, 2014 interspousal deed transfer, was a fraudulent transfer under the Uniform Voidable Transactions Act (UVTA), Civil Code section 3439 et seq., formerly known as the Uniform Fraudulent Transfer Act (see Stats. 2015, ch. 44, § 3).

Olivia filed a special motion to strike Pham's first amended complaint under Code of Civil Procedure section 425.16 (special motion to strike, or anti-SLAPP motion).[2] An anti-SLAPP motion is resolved through a two-step process in which the court decides (1) if the defendant has shown that the challenged claim arose out of his or her constitutionally protected petitioning or speech activity; and (2) assuming the defendant has met his or her burden to show he or she was engaged in protected activity, whether the plaintiff has established a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) In addressing this second step, the plaintiff

_____

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 (*Jarrow Formulas*).)

Further statutory references are to the Code of Civil Procedure unless otherwise stated.

is required to show that his or her claim has "at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

Olivia contended, inter alia, that Pham's entire action was barred under the anti-SLAPP statute because the suit was based upon Olivia's exercise of her constitutionally protected activity of participating in court proceedings, namely, her negotiation, execution, and submission to the court for its entry of the 2014 Stipulated Order. The court below disagreed, concluding that Olivia had failed to meet her initial burden of showing that Pham's claims arose out of Olivia's constitutionally protected activity. Because of this ruling, the court denied Olivia's anti-SLAPP motion without considering the second step of whether Pham had shown that her claims had "at least 'minimal merit.' " (*Park*, *supra*, 2 Cal.5th at p. 1061.) Additionally, because of its denial of the anti-SLAPP motion, the court denied as moot Pham's concurrent motion to lift the statutory stay upon discovery. (See § 425.16, subd. (g).)

Olivia appeals the order denying the anti-SLAPP motion. We agree with Olivia that she met her burden of showing that the claims alleged in the first amended complaint arose out of her constitutionally protected activity. The trial court should have therefore considered, as the second step in evaluating an anti-SLAPP motion, i.e., whether Pham had established a probability of prevailing on her claims. Therefore, the case must be reversed and remanded for further proceedings on the anti-SLAPP motion.

Olivia's position, asserted below and on appeal, was that the litigation privilege under Civil Code section 47, subdivision (b) (Civ. Code, § 47(b)) constituted an absolute bar to Pham's claims, and therefore Pham could not establish a probability that she would prevail. As part of the second step of the analysis of the anti-SLAPP motion, this privilege issue is one to be decided by the trial court. But because it is a question of law, and because the parties urge that we do so, we will address the litigation privilege here to provide guidance to the court on remand. Our conclusion is that, if the trial court finds that Pham's claims based upon the fraudulent transfer of assets have "at least 'minimal merit' " (*Park*,

*supra*, 2 Cal.5th at p. 1061), the litigation privilege will not act as a bar to her claims against Olivia under the second step of the analysis of Olivia's anti-SLAPP motion.

We will direct that the trial court, on remand in addressing the anti-SLAPP motion, first consider Pham's motion to lift the discovery stay. Then, after receiving and considering further briefing, evidence, and argument as it deems appropriate, the court shall decide whether Pham has established, under the second step, a probability of prevailing on her claims.

## I. PROCEDURAL HISTORY

### A. The First Amended Complaint

Pham filed suit on or about June 12, 2017.

On January 23, 2019, Pham filed an unverified first amended complaint (hereafter, the Complaint) against An and Olivia. Pham alleged 10 purported causes of action, namely (1) breach of fiduciary duty (against An only), (2) violation of Family Code section 2040, (3) violation of court orders, (4) fraudulent transfer of assets with actual fraudulent intent, (5) constructive fraudulent transfer of assets, (6) civil conspiracy, (7) aiding and abetting, (8) action on judgment (against An only); (9) creditor's suit, and (10) constructive trust.

In the general allegations of the Complaint common to each of the 10 causes of action, Pham alleged, among other things,[3] that An and Olivia were previously married; Olivia filed for dissolution of the marriage in October 2001 (i.e., the Olivia/An proceeding); a judgment, status only, was filed June 25, 2004; a judgment of dissolution of the assets and liabilities was entered on July 18, 2007; that judgment included a provision that the parties agreed to sell the Fawnskin Home, and divide the proceeds; that vacation home was never

---

[3] To avoid repetition, we will sometimes dispense with the prefatory "Pham alleged" in describing the allegations of the Complaint.

sold, and it remained jointly owned by An and Olivia; and the Fawnskin Home had an estimated value of $3,666,536.

Pham married An, who thereafter filed a dissolution proceeding in or about September 2007. Their judgment of dissolution filed November 20, 2007, was set aside (except as to the issue of status) by a stipulation and order on August 26, 2009. Property issues remained, but the court dismissed the proceeding. Thereafter, in or about April 2010, An filed another dissolution proceeding in Ho Chi Minh City, Vietnam, which was still pending (the Vietnam proceeding).

In July 2010, Pham filed a new dissolution proceeding, i.e., the Pham/An proceeding. On December 7, 2011, Pham and An resolved all issues of support, division of assets, and division of liabilities in a stipulation and order entered in that proceeding. An agreed to obtain a court order in the Vietnam proceeding consistent with the parties' settlement.[4] An never intended to comply, and did not comply, with the December 7, 2011 stipulation and order, and continued to maintain the Vietnam proceeding in derogation of the parties' agreement.

Thereafter, Pham filed a motion below in the Pham/An proceeding seeking various relief, including enforcement of the December 7, 2011 stipulation and order and the issuance of temporary restraining orders relative to California realty owned by An. On March 26, 2014, the court issued an order (the March 26, 2014 Order) providing, inter alia, that the "Automatic Temporary Restraining Orders" (ATROs) were reinstated against An, and that An was restrained from transferring, encumbering, hypothecating, concealing, or in

---

[4] The parties' settlement included Pham's acceptance of five Vietnam apartments to address future child support obligations for the parties' two children as well as an agreement to place "almost all of the real properties located in Vietnam into a corporate trust for the benefit of the two children."

any way disposing of any legal or equitable interest in three properties: the Fawnskin Property, a home located in Newport Coast, and a home located in Huntington Beach.

An violated the March 26, 2014 Order and ATROs by subsequently transferring his one-half interest in the Fawnskin Property to Olivia.[5] Pham alleged in the Complaint that An devised a scheme to defraud her and to prevent enforcement of the March 26, 2014 Order through an agreement with Olivia for the transfer of An's one-half interest in the Fawnskin Property in exchange for Olivia's release of her interest in furniture and personal property located on Pelican Drive in Newport Coast, California (Pelican Drive Property).[6] An and Olivia "fraudulently claimed this division was not clearly divided in the prior July 18, 2007 Judgment, even though almost 7 years had passed since . . . they originally agreed to divide the proceeds after the sale of the Fawnskin Home." An's transfer of his interest in the Fawnskin Property occurred on June 13, 2014, by an interspousal deed transfer.

Pham alleged that in the Pham/An proceeding, the court later issued a bench warrant for An's arrest, ordered (in four separate orders) that An pay Pham sanctions/attorney fees totaling more than $160,000, and ordered An to pay $2,752,800 in child support arrearages by August 1, 2018.

---

[5] Pham alleged that An further violated the March 26, 2014 Order by attempting to sell his interests in the Newport Coast and Huntington Beach homes, but he was thwarted in those efforts by Pham's attorney and through the lower court's appointment of a receiver.

[6] The Complaint contains repeated allegations that An and Olivia conspired or entered into an agreement "to fraudulently transfer *½ of his interest* in [the] Fawnskin Home." (Italics added.) Since the parties agree that the Fawnskin Home, prior to the acts alleged in the Complaint, was owned by An and Olivia equally, it appears that the intended allegation in the Pham's Complaint was that the parties conspired or agreed to fraudulently transfer *An's one-half interest* in the Fawnskin Home.

In the fourth and fifth causes of action,[7] Pham alleged that "An conspired with Olivia to enter into an agreement to fraudulently transfer" his one-half interest in the Fawnskin Property in exchange for a release by Olivia of her interest in personal property and furniture located at the Pelican Drive Property; this transfer, which was in violation of the March 26, 2014 Order and the ATROs, occurred on June 13, 2014. An accomplished the transfer of assets "with the intent to hinder, delay, or defraud" Pham, a creditor. As to the fifth cause of action, Pham alleged that "An did not receive equivalent value in exchange for all of the previously mentioned transferred assets."

In the sixth cause of action for civil conspiracy, Pham alleged that each of the defendants devised and agreed upon a common scheme, inter alia, (1) "to hinder, delay, defraud and make it difficult for [Pham] as a creditor to enforce her orders/judgments," and (2) to agree to and accomplish the fraudulent transfer of An's one-half interest in the Fawnskin Property in exchange for the release by Olivia of her interest in personal property and furniture. Each defendant was aware of, and cooperated in, each of the other defendants' actions.

In the seventh cause of action, Pham alleged that defendants caused her harm when they, inter alia, entered into an agreement to transfer and transferred An's one-half interest in the Fawnskin Property in exchange for a release by Olivia of her interest in personal

---

[7] The first and eighth causes of action were directed against An, only. The court below sustained without leave to amend Olivia's demurrer to the second and third causes of action, and it sustained her demurrer to the tenth cause of action with leave to amend. Olivia has represented to this court that Pham never filed an amended complaint, and Pham does not challenge this statement. Although Olivia demurred to the ninth cause of action, and Pham opposed that demurrer, the court did not rule on the demurrer to the ninth cause of action. Accordingly, we address here only the fourth through seventh and ninth causes of action of the Complaint.

.                                                      7

property and furniture. Olivia, as an aider and abettor, was responsible for the conduct of An and stood in his shoes, and as such, was jointly and severally liable.

In the ninth cause of action identified as a "creditor's suit" (capitalization omitted), Pham alleged that she had several monetary "judgments" (i.e., orders) against An that remained unpaid. Olivia held property in which An had an interest, including the Fawnskin Property, and personal property and furniture owned by An and Olivia while they lived at the Pelican Drive Property. Olivia owed An $2 million or more.

## B. The Special Motion to Strike

On July 10, 2019, Olivia filed a special motion to strike the Complaint under the anti-SLAPP statute.[8] She asserted that each of the eight causes of action against her arose out of the exercise of her protected petitioning activity. The basis for Olivia's position was that the agreement alleged in the Complaint concerning the transfer of An's one-half interest in the Fawnskin Property in exchange for Olivia's release of any interest in personal property and furniture was made in a stipulation and order filed amending the judgment entered in the Olivia/An proceeding (i.e., the 2014 Stipulated Order). Olivia asserted further that since the claims arose out of her exercise of protected activity, Pham was required to show a probability of prevailing, a showing that she could not make because, inter alia, (1) the litigation privilege (Civ. Code, § 47(b)) barred the claims asserted against Olivia; (2) the exchange of An's interest in the Fawnskin Property and her release of her interest in the furniture and personal property involved property of substantially equivalent value; (3) Olivia had no actual intent to hinder, delay or defraud Pham; and (4) Olivia established

---

[8] It is apparent that An did not respond to the Complaint. The record reflects that, on September 13, 2019, Pham filed a request for entry of default against An on the Complaint. The record, however, does not reflect that the court thereafter formally entered a default against him.

.                                                            8

through her declaration that she had acted in good faith in the transaction and that she had no knowledge of An's alleged wrongdoing.

Olivia submitted her own declaration and two requests for judicial notice in support of the motion to strike. Olivia sought in her first request that the court take judicial notice of three documents. The first document was a judgment on reserved issues filed in the Olivia/An proceeding on July 18, 2007. The judgment included a provision that the Fawnskin Property was to be sold by the parties and the proceeds equally divided. The second document was the 2014 Stipulated Order (signed by the court and filed May 5, 2014), amending the judgment on reserved issues in the Olivia/An proceeding The 2014 Stipulated Order provided, inter alia, that (a) the Fawnskin Property was awarded to Olivia with An holding no further interest therein; (b) concurrent with execution of the stipulation, An would sign an interspousal transfer deed transferring his interest in the Fawnskin Property; (c) all interest in the personal property and furniture that was previously located at the Pelican Drive Property that the parties stipulated had "not [been] clearly divided in the prior Judgment" was awarded to An as his sole and separate property; and (d) the parties stipulated that the community equity values of the Fawnskin Property being awarded to Olivia and the personal property and furniture being awarded to An were "substantially equivalent." The third document was an interspousal grant deed—signed by An on April 1, 2014, and recorded on June 13, 2014—in which An transferred his interest in the Fawnskin Property to Olivia. The court below granted Olivia's first request for judicial notice of the three documents.

Olivia filed a demurrer to the Complaint concurrently with her motion to strike.

Pham opposed the special motion to strike. She submitted a memorandum of points and authorities, a declaration of counsel, a request for judicial notice, and objections to evidence. Pham argued, inter alia, that Olivia's conduct was not constitutionally protected under the anti-SLAPP statute, the litigation privilege under Civil Code section 47(b) was not

.                                                        9

a defense to the claims against Olivia, and Pham had established that her claims had minimal merit to survive the special motion to strike.

After a hearing on the special motion to strike, the court issued an order filed on October 1, 2019, denying the motion to strike.  The court held that the conduct alleged in the Complaint did not arise out of protected activity, concluding that the gravamen of the claims was "the wrongful ***transfer*** of . . . the Fawnskin Home [by defendant An] to defendant Olivia."  (Original italics and bold.)[9]

Olivia filed a timely appeal from the order denying the special motion to strike.

## II.    DISCUSSION

### A.    Anti-SLAPP Motions to Strike

A SLAPP suit is one in which a plaintiff "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*).)  SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, which is "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation."  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)  The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  The Legislature has directed that the language of the statute be "construed broadly."  (§ 425.16, subd. (a).)

---

[9] In the October 1, 2019 order, the court also issued its ruling on Olivia's demurrer to the Complaint.  The order on demurrer is not relevant to this appeal.

Subdivision (e) of section 425.16 (§ 425.16(e)) identifies four general categories of protected activities of petition or free speech, the first two of which being relevant here: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The exercise of speech or petitioning rights potentially subject to anti-SLAPP protection under clauses (1) and (2) is not limited to actions that concern an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

A motion to strike under section 425.16 is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)" The second step the court considers in addressing the special motion to strike—if it finds that the defendant has shown that the cause of action arose out of conduct arose out of protected activity—is "whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon*, *supra*, 29 Cal.4th at p. 67.) In this step, the plaintiff is required to show that its claim has "at least 'minimal merit.' " (*Park*, *supra*, 2 Cal.5th at p. 1061.) Thus, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning

. 11

*and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*), original italics.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) In performing our de novo review, we " 'conduct[] an independent review of the entire record. [Citations.]' " (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) "[O]ur review is conducted in the same manner as the trial court in considering an anti-SLAPP motion. In determining whether the defendant . . . has met its initial burden of establishing that the plaintiff's . . . action arises from protected activity, we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2); [citations].) The second prong—i.e., whether the plaintiff . . . has shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions. [Citation.] '[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " [Citations.]' " (*Ibid.*)

We review the trial court's decision, not its rationale. "If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. [Citation.]" (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.)

12

## B. The Underlying Conduct Was Protected Activity

We address the first step in the analysis of a special motion to strike, namely, whether Olivia, as the moving party, sustained her burden of establishing that the cause of action arose out of activity that is protected under the anti-SLAPP statute. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) She was therefore required to "establish both (1) that [her] act constituted protected activity; and (2) the opposing party's cause of action *arose from* that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130, italics added.) Olivia contends that she made that threshold showing.

In determining whether the cause of action is one "arising from" the defendant's protected activity (§ 425.16, subd. (b)(1)), "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89, original italics); see also *Park*, *supra*, 2 Cal.5th at p. 1062 ["claim arises from protected activity when that activity underlies or forms the basis for the claim"].) It is not enough for the defendant to show that the plaintiff's lawsuit was filed *after* the defendant engaged in protected activity, or that the claim was " 'triggered' by protected activity." (*Navellier*, *supra*, at p. 89, original italics.) The only way specifically identified in the statute that a party filing a motion to strike can show that the challenged claim " 'arises from' " his or her protected conduct is if that conduct "falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' [Citation.]" (*Equilon*, *supra*, 29 Cal.4th at p. 66.) Two of those categories identified in section 425.16(e) potentially apply here, namely, "(1) any written or oral statement or writing made before a . . . judicial proceeding, . . . [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."

.                                                    13

"The constitutional right of petition encompasses ' " 'the basic act of filing litigation.' " ' [Citation.]" (*Navellier*, *supra*, 29 Cal.4th at p. 90.) Therefore, "a claim based on actions taken in connection with litigation falls 'squarely within the ambit of the anti-SLAPP statute's "arising from" prong. (§ 425.16, subd. (b)(1).)' [Citation.]" (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759.)

Courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) Thus, "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480.) Settlement negotiations and agreements are made "in connection with" litigation for purposes of section 425.16. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963 (*Seltzer*).) Protected activity also includes "communications in connection with anticipated litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263 (*Neville*).)

Olivia argues that the underlying claims alleged in Pham's Complaint are based on allegations that (1) An and Olivia entered into an agreement under which An would fraudulently convey to Olivia his community interest in the Fawnskin Property in exchange for Olivia's relinquishment of her interest in personal property and furniture, and (2) that agreement was implemented by An's transfer of his interest in the Fawnskin Property to Olivia by interspousal deed. Olivia argues that the agreement referred to in the Complaint was memorialized by the parties in a stipulation signed by them and an order entered thereon filed May 5, 2014 (i.e., the 2014 Stipulated Order), which amended the 2007 judgment on reserved issues in the Olivia/An proceeding. Olivia argues that therefore, "[b]ecause the negotiation, execution, and submission of that stipulation and order . . . and the subsequent recordation of the deed[] were done in connection with Olivia's protected

.

petitioning activity," the trial court should have held that Olivia satisfied the first prong of the anti-SLAPP analysis.

The general allegations of the Complaint are incorporated into each of the causes of action relevant to this appeal, i.e., the fourth, fifth, sixth, seventh, ninth causes of action. (See fn. 7, *ante*.)  Those general allegations, as discussed above, contained the essential factual grounds for Pham's claims, including, inter alia, An having devised a scheme to prevent Pham's enforcement of the March 26, 2014 Order by agreeing with Olivia to transfer An's one-half interest in the Fawnskin Property in exchange for Olivia's relinquishment of her interest in furniture and personal property, and the consummation of that scheme by the formal recordation of an interspousal deed to the real property on June 13, 2014.  Therefore, Olivia's argument that she satisfied the first prong by showing that the claims in the Complaint arose out of protected petitioning activity applies to each of the causes of action of the Complaint we consider in this appeal.

The 2014 Stipulated Order was undeniably a "(1) [a] written or oral statement or writing made before a . . . judicial proceeding, . . . [as well as] (2) [a] written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16(e).)  It was certainly the kind of writing filed in litigation within the scope of protected activity under the anti-SLAPP statute.  (See, e.g., *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 906 [allegedly improper settlement offer in prior litigation was within anti-SLAPP statute]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842 [alleged fraudulent statements in connection with stipulation for entry of judgment in prior case was within anti-SLAPP statute].)

Further, we conclude that the claims alleged by Pham arose from—or were "*based on*" (*Navellier*, *supra*, 29 Cal.4th at p. 89, original italics)—Olivia's petitioning activity that was protected under the anti-SLAPP statute.  *Underlying* and *forming the basis for* Pham's claims (see *Park*, *supra*, 2 Cal.5th at p. 1062) was Olivia's conduct of executing and

.                                                                      15

submitting to the court for entry and filing the 2014 Stipulated Order in the Olivia/An proceeding. It was through this court filing that Olivia and An both *memorialized their agreement* in which Olivia exchanged her interest in personal property and furniture for An's transfer of his interest in the Fawnskin Home and *formally effectuated the transfer* of that real property.

Pham, in asserting that Olivia's activity was not protected under the anti-SLAPP statute, emphasizes the alleged illegality of the agreement to transfer An's interest in the Fawnskin Property to Olivia, describing it as the "type[] of secret agreement[] to transfer between spouses to avoid creditors  [which] are subject to the fraudulent transfer laws." Pham's claim that An and Olivia, through the 2014 Stipulated Order, accomplished a fraudulent conveyance does not defeat the finding that Olivia established the first prong of her special motion to strike the Complaint. A defendant may establish the first prong of showing the activity to be constitutionally protected *even if the activity is allegedly unlawful*. (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 165-166.) Thus, settlement negotiations conducted during litigation have been held protected activity under the first prong even where they were allegedly conducted in bad faith or for an unlawful purpose. (See *Seltzer*, *supra,* 182 Cal.App.4th at pp. 964-967 [plaintiff claimed her insurer's attorney secretly negotiated settlement with third party that deprived plaintiff of insurance coverage]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123-124 [protected activity found even where there were allegations of nondisclosure or fraudulent statements made during settlement process].)  "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 (*Chavez*).)

An exception to this principle exists where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*), see also *id.* at

.                                                    16

pp. 316-317.) "In such a narrow circumstance, . . . the motion [to strike] must be denied. The rationale is that the defendant cannot make a threshold showing that the illegal conduct falls within the purview of the statute and promotes section 425.16's purpose to 'prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)' [Citation.] If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Id.* at p. 316.) The conduct here of entering into the stipulation in the Olivia/An proceeding that accomplished the transfer of An's interest in the Fawnskin Property cannot be deemed illegal, either by concession or as a matter of law. The exception enunciated in *Flatley* does not apply.

Pham argues that the trial court correctly held that claims in the Complaint did not arise out of Olivia's protected activity because the conduct that produced the injury "was the wrongful transfer of An's interest in the Fawnskin Property to Olivia," not the execution and submission of the 2014 Stipulated Order. The trial court held: "The court's task is to determine the gravamen of the cause of action, not merely its label . . . . [¶] The wrongful and injury producing conduct in this instance is the wrongful transfer of defendant An's interest in the Fawnskin Home to defendant Olivia. A mere agreement to ***transfer*** does not cause plaintiff Pham any injury. Rather, it is the conduct of transferring property which forms the basis for all of plaintiff Pham's claims against Olivia." (Original italics and bold.) We conclude that the negotiation and execution of the 2014 Stipulated Order and its submission to the court constituted activity that was constitutionally protected under the anti-SLAPP statute.

The 2007 judgment in the Olivia/An proceeding provided that the Fawnskin Property would be held by Olivia and An for its anticipated sale and with the sales proceeds divided equally. The judgment—in paragraph 4, which concerned the ownership, anticipated sale

. 17

and division of the sales proceeds of the Fawnskin Property and of the Pelican Drive Property—contained the specific provision: "The court shall reserve broad jurisdiction to make any further orders necessary to carry out the terms of this Judgment." Generally, after there has been a division of property by the trial court resulting in the entry of a final judgment, "the court loses jurisdiction to modify or alter the division made. [Citation.] An exception to this general rule, however, arises in cases where the court expressly reserves jurisdiction to modify a property award. [Citations.]" (*Mueller v. Walker* (1985) 167 Cal.App.3d 600, 605-606.) Irrespective of the alleged motivations of the parties—a matter relevant to the merits of Pham's claims, not whether the claims arose out of protected activity for purposes of the first prong of the anti-SLAPP statute (see *Chavez*, *supra*, 94 Cal.App.4th at p. 1089)—the parties could appropriately seek an order modifying the 2007 judgment in the Olivia/An proceeding as a procedural mechanism for memorializing their agreement concerning the transfer of An's interest in the Fawnskin Property. As such, the negotiation and execution of the 2014 Stipulated Order and its submission to the superior court for the purpose of modifying the 2007 judgment was an integral matter in the transfer of An's interest in the Fawnskin Property. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2019) ¶ 15:266 [when judgment awards property with legal description, certified copy may be recorded to convey title].)

The claims asserted in the Complaint were "*based on*" Olivia's conduct of negotiating and executing the 2014 Stipulated Order and submitting it for entry and filing, which was protected litigation activity under section 425.16. (*Navellier*, *supra*, 29 Cal.4th at p. 89, original italics.). We conclude therefore that the claims arose out of constitutionally protected activity and that Olivia established the first prong required to support her anti-SLAPP motion.

## B. Remand for Consideration of Probability of Prevailing

We have concluded that Olivia's alleged underlying conduct was protected under the anti-SLAPP statute and that Pham's claims arose out of that conduct. The trial court did not

address the second prong of whether Pham had established a probability of prevailing on her claims. (See § 425.16, subd. (b)(1).) Satisfying this second prong "requires only 'a minimum level of legal sufficiency and triability' [citation]." (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 738.)

Olivia makes three principal arguments in asserting that Pham cannot meet her burden of showing a probability of prevailing: (1) the litigation privilege acts as a bar to all claims; (2) Pham did not make a sufficient evidentiary showing that her claims had minimal merit to defeat Olivia's motion to strike; and (3) Pham's claims are barred because they are an improper collateral attack on the amended judgment in the Olivia/An proceeding. For the reasons we will discuss, *post*, we will address the first issue to provide guidance to the trial court, but we will decline to address the second and third issues and will remand the case for further proceedings on the special motion to strike for a determination of whether Pham can establish a probability of prevailing on her claims.

### 1. Litigation Privilege

Olivia contends that each of Pham's claims in the Complaint is barred by the litigation privilege under Civil Code section 47(b). Although the plaintiff bears the burden in resisting a special motion to strike of establishing the second prong that her claim has merit, the defendant bears the burden of proving any affirmative defenses. (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 769 (*Laker*); see also *id.* at p. 770 [defendants in arguing anti-SLAPP motion should be granted, met their burden of establishing that defamation claim was barred by litigation privilege].) Nonetheless, in addressing the second prong of an anti-SLAPP motion, "a plaintiff must show that any asserted defenses are inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses. [Citation.]" (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 288 (*Weeden*); see also *Neville*, *supra*, 160 Cal.App.4th at p. 1263, fn. 7 [if alleged conduct is subject to litigation privilege, plaintiff cannot establish probability of prevailing to defeat an anti-SLAPP motion].) Olivia argues that because each of the claims

. 19

arises out of the 2014 Stipulated Order filed in the Olivia/An proceeding, the litigation privilege, which attaches to communications by litigants or other participants made in judicial proceedings, is a bar to all claims

With respect to this issue, the trial court—although addressing it in the context of its ruling on the demurrer rather than the special motion to strike—concluded that the litigation privilege did not bar Pham's claims. Further, Olivia and Pham have both argued the issue on appeal, and at oral argument have urged that, if we were to remand the case, we should provide guidance to the trial court as to the applicability of the litigation privilege. We will therefore address this question here as one that concerns a pure issue of law. (See *Greco v. Greco* (2016) 2 Cal.App.5th 810, 826 [although trial court did not address the defense as part of its analysis of second step of anti-SLAPP motion, appellate court considered applicability of litigation privilege because it "presents a question of law, without any factual or evidentiary issues"]; see also *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615 [although trial court found, erroneously, that anti-SLAPP statute did not apply and thus did not determine whether the plaintiff showed a probability she would prevail, appellate court addressed second prong since its review was de novo].)[10]

---

[10] From the record, it appears undisputed that An and Olivia executed and submitted the 2014 Stipulated Order and that pursuant thereto, An's interest in the Fawnskin Property was conveyed to Olivia by a deed recorded on June 13, 2014. Thus, it seems clear that the parties agree that the transfer to Olivia by interspousal grant deed of An's interest in the Fawnskin Property—the action taken that is the basis for Pham's fraudulent transfer claims—was accomplished through the execution and submission of the 2014 Stipulated Order. In addressing the litigation privilege here, we will assume for sake of discussion that, on remand, Pham meets her burden of establishing that her claims, including the claim that defendants entered into an agreement to fraudulently transfer An's interest in the Fawnskin Property to Olivia, have "at least 'minimal merit.' " (*Park*, *supra*, 2 Cal.5th at p. 1061.) If the trial court makes that finding, then the litigation privilege would not bar Pham's claims. Of course, if Pham fails on remand to meet her burden of showing that her claims have minimal merit, the court would then grant the anti-SLAPP motion, and the Complaint would be subject to dismissal on that basis.

.

As stated by the California Supreme Court, "the [litigation] privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) "[T]he absolute privilege established by [Civil Code] section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to ' "assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." ' " (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.)

The litigation privilege only protects communications and publications. (*Rusheen*, *supra*, 37 Cal.4th at p. 1058.) Thus, as the California Supreme Court has explained, a threshold issue in determining whether the privilege applies "is whether . . . conduct is communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Ibid.*) The Court in *Rusheen* held further that "[t]he 'pleadings and process in a case are generally viewed as privileged communications.' [Citation.]" (*Ibid.*) Thus, the litigation privilege has been held to apply to "abuse of process claims alleging the filing of false or perjurious testimony or declarations. [Citations.]" (*Ibid.*)

Olivia asserts that the litigation privilege applies because the "gravamen of Pham's claims against Olivia involved the communicative act of obtaining an amended judgment by executing and submitting to the court" the 2014 Stipulated Order. Pham responds that the litigation privilege does not bar the claims alleged in her Complaint because it was the fraudulent transfer of An's interest in the Fawnskin Property—which was not communicative conduct—that was the gravamen of the action.

.                                                    21

In support of her position, Pham relies on *Chen v. Berenjian* (2019) 33 Cal.App.5th 811 (*Chen*). There, the plaintiff Chen brought suit against two brothers, Shazad (who owed a judgment debt to Chen) and Sharmad. (*Id.* at p. 815.) Chen alleged that the defendants had entered into an agreement under which Sharmad would sue Shazad and obtain a judgment against him. (*Ibid.*) Sharmad filed the sham lawsuit, and the brothers stipulated to a judgment of $199,900, an amount (it was alleged) for which "no 'genuine grounds' " existed. (*Ibid.*) After Chen obtained a second judgment against Shazad and attempted to enforce the judgments, Sharmad executed upon Shazad's property, thereby thwarting Chen's enforcement efforts. (*Id.* at p. 816.) Chen then sued Shazad and Sharmad under the UVTA, and the brothers, through a demurrer to the complaint, successfully argued before the trial court that Chen's action was barred by the litigation privilege. (*Ibid.*)

The Court of Appeal reversed. It explained that the UVTA governed fraudulent transfer claims. (*Chen*, *supra*, 33 Cal.App.5th at p. 817.) "The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt. [Citation.]" (*Ibid.*) Based upon a showing of actual or constructive fraud, a creditor may obtain an order setting aside the fraudulent transfer. (*Ibid.*) The *Chen* court acknowledged the broad application of the privilege and discussed at length the facts and holding in *Rusheen*, *supra*, 37 Cal.4th 1048. (*Chen*, *supra*, at pp. 818-820.) The appellate court noted further that, under *Rusheen*, *supra*, at page 1058, "the threshold issue in determining whether the litigation privilege applies is whether the defendant's alleged conduct is communicative or noncommunicative. [Citation.]" (*Chen*, *supra*, at pp. 819-820.)

The *Chen* court distinguished *Rusheen*, where the "Court concluded the communicative conduct of procuring a judgment based on the use of allegedly fraudulent declarations of service, and not the noncommunicative act of executing on the judgment, was the gravamen of the abuse of process cause of action. [Citation.]" (*Chen*, *supra*, 33 Cal.App.5th at p. 821.) "[H]ere, in contrast, Chen sued for fraudulent conveyance. Under

.                                         22

the UVTA, it is the *transfer* made or the obligation incurred by the debtor which, when made with the requisite intent or without sufficient consideration, is wrongful and, therefore, voidable. [Citation.] Thus, the acts causing injury to Chen were the agreement to defraud him and the transfer of the [property] from Shazad to Sharmad by means of executing on the judgment. The acts of filing the sham complaint and agreeing to the stipulated judgment, though communicative in nature, were not the gravamen of Chen's fraudulent transfer cause of action." (*Ibid.*, original italics.) The appellate court rejected defendant Sharmad's assertion that failure to apply the privilege " 'would frustrate the purposes of the litigation privilege' " (*ibid.*), holding that "[l]evying on property as part of a scheme to defeat a creditor's rights in violation of the UVTA is not communicative conduct; therefore, extending the litigation privilege to such conduct advances none of the privilege's purposes." (*Id.* at p. 822.) The court concluded that if it extended the litigation privilege to the facts alleged by Chen, it "would be providing a road map to circumventing the UVTA and defeating the rights of creditors." (*Ibid.*)

In *Aghaian v. Minassian* (2020) 59 Cal.App.5th 447 (*Aghaian*)), the court relied on *Chen* in rejecting the defendants' position that the plaintiffs' fraudulent transfer action under the UVTA was barred by the litigation privilege. The defendants, Shahen and Alice, had been married for over 50 years and owned, as joint tenants, their Sherman Oaks home and a second house across the street. (*Aghaian*, *supra*, at p. 452.) The plaintiffs alleged that the defendants, and their codefendant son (Arthur), " 'concocted' a 'scheme . . . to hinder, delay or defraud Shahen's creditors, particularly [the] [p]laintiffs, by putting [the couple's] two houses . . . into Alice's name only, and thereby making it more difficult for [the p]laintiffs to levy on them.' " (*Ibid.*) The plaintiffs alleged that in furtherance of this scheme, Shahen and Alice filed a fraudulent petition for marital dissolution—even though they had never separated—and with their son Arthur acting as Shahen's guardian ad litem, stipulated to a judgment in the dissolution action under which ownership of the houses was awarded to

Alice, and Shahen was assigned the obligation to pay any judgment that might thereafter be entered in the plaintiffs' pending lawsuit. (*Id.* at pp. 452-453.)

The defendants in *Aghaian* asserted that the litigation privilege barred the plaintiffs' claims because the filing and prosecution of the dissolution proceeding by Alice, Shahen's statements and conduct in the proceeding, and the act of petitioning to appoint Arthur as Shahen's guardian ad litem " 'were all communications made during the course of judicial proceedings.' " (*Aghaian*, *supra*, 59 Cal.App.5th at p. 457.) The Court of Appeal disagreed. Relying on *Chen*, *supra*, 33 Cal.App.5th 811, the court found that "[t]he sham lawsuit and stipulated judgment in *Chen* are analogous to the alleged sham dissolution proceeding and stipulated judgment perpetrated in this case. Just as Shazad and Sharmad used the judgment in *Chen* and enforcement procedures as a means for transferring Shazad's property to Sharmad, in the instant case Shahen and Alice (with Arthur's aid) used the dissolution judgment to authorize and justify Shahen's transfer of the Sherman Oaks properties to Alice. *As in Chen, it is the transfer of the property, not the sham judicial proceedings used to provide legal cover for the transfer, that constitutes the gravamen of the action.* Shahen's transfer of the Sherman Oaks properties, like the transfer of Shazad's property to Sharmad, is not protected by the litigation privilege." (*Aghaian*, *supra*, at p. 458, italics added.)

If Pham establishes on remand that her fraudulent transfer claims have minimal merit, then we believe that *Chen*, *supra*, 33 Cal.App.5th 811 and *Aghaian*, *supra*, 59 Cal.App.5th 447 are persuasive authority that the litigation privilege would not bar Pham's claims asserted here. The allegations made in the Complaint, coupled with the judicially-noticed 2014 Stipulated Order, show that in April 2014, An and Olivia signed a stipulation implementing (upon the later entry of the order) the transfer of An's interest in the Fawnskin Property, in exchange for Olivia's relinquishment of any interest in furniture and personal property located at the Pelican Drive Property, by amending the 2007 judgment in the Olivia/An proceeding. The stipulation was signed less than one week after the issuance of

24

an order in the Pham/An proceeding in which An was restrained from transferring or encumbering his interest in the Fawnskin Property. Pham alleged that in entering into this transaction, An and Olivia had "fraudulently claimed this [property] division was not clearly divided [*sic*] in the prior July 18, 2007 Judgment, even though almost 7 years had passed since" entry of that judgment.

As alleged by Pham, the fraudulent transfer of property—as was the case in *Chen* and *Aghaian*—was accomplished through a claimed sham legal proceeding implemented by An and Olivia. In *Chen*, *supra*, 33 Cal.App.5th 811, the defendants (Shazad, judgment debtor to the plaintiff, and Sharmad) participated in a sham lawsuit that resulted in the entry of a stipulated judgment without factual basis to prevent the plaintiff from executing against Shazad's property. In *Aghaian*, *supra*, 59 Cal.App.5th 447, the defendants accomplished an allegedly fraudulent transfer of the judgment debtor's assets by instituting a new, sham dissolution proceeding. Here, An and Olivia are alleged to have made a fraudulent transfer of An's assets to place them beyond the reach of creditor Pham by the device of amending by stipulation and order a judgment that had been dormant for six and one-half years. Although in *Chen* and *Aghaian*, the process by which the fraudulent transfer was initiated was through the filing of a legal proceeding, while here (as alleged by Pham), the fraudulent transfer was initiated by the filing of a collusive stipulation in an existing legal proceeding, this is a procedural distinction without relevance. It remains the case that in *Chen, Aghaian*, and here, "*it is the transfer of the property, not the sham judicial proceedings used to provide legal cover for the transfer, that constitutes the gravamen of the action.*" (*Aghaian*, *supra*, at p. 458, italics added.) Moreover, it would be anomalous were we to conclude that the alleged conduct here is not actionable, while the same conduct of fraudulently conveying property, accomplished without the employment of a stipulation and order filed in court,

.                                                    25

would be subject to liability.[11]  An extension of the litigation privilege to Olivia's alleged conduct "would be providing a road map to circumventing the UVTA and defeating the rights of creditors."  (*Chen*, *supra*, 33 Cal.App.5th at p. 822.)

We have concluded, *ante*, that Olivia met her burden under the first prong of the anti-SLAPP statute because the claims alleged in the Complaint were based on Olivia's protected litigation activity under section 425.16 of negotiating, executing, and submitting the 2014 Stipulated Order.  That conclusion is not inconsistent with the guidance we provide to the trial court here concerning the litigation privilege:  That if Pham's claims based upon the fraudulent transfer of property are found on remand to have minimal merit, the litigation privilege would not act as a bar to those claims, because the gravamen of the action is the allegedly fraudulent transfer of property, not the vehicle of the execution of the 2014 Stipulated Order used to accomplish that transfer.  As was recently explained by the Fourth District Court of Appeal (Division One):  "[A]lthough courts may use the litigation privilege 'as an aid' in determining whether a given communication arises out of protected activity, the litigation privilege and anti-SLAPP statute serve different purposes and are not necessarily coextensive.  [Citations.]"  (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 428, citing *Flatley*, *supra*, 39 Cal.4th at pp. 322-323.)

_____

[11] We note further that insulating a party from liability for fraudulently conveying property under the guise of a property stipulation and order could result in making the court an unwitting participant in such conduct because of the lack of judicial controls inherent in the process.  As has been explained by the authors of one treatise:  "The court *must* accept the parties' written agreements and oral stipulations 'in open court' regarding disposition of their property.  In effect, the court's 'only role with regard to a proper stipulated disposition of marital property is to *accept the stipulation* and, if requested, to *incorporate the disposition into the judgment*.'  [Citation.]"  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) ¶ 8:961, original italics, quoting *In re Marriage of Cream* (1993) 13 CalApp.4th 81, 91.)

Based upon our de novo review, assuming that Pham establishes below that her claims of fraudulent transfer have minimal merit under the second prong of the anti-SLAPP statute, the litigation privilege under Civil Code section 47(b) would not act as a bar to her claims. (See *Weeden*, *supra*, 70 Cal.App.5th at p. 288.)[12]

### 2. Consideration of Evidentiary Basis for Claims

The court below held that Olivia had failed to meet her burden under the first prong of showing that the claims arose out of protected activity. Accordingly, the court did not consider, under the second prong, whether Pham had made a sufficient evidentiary showing that her claims had at least minimal merit to survive the special motion to strike.

In its order, the court recited that, prior to the hearing on the motion to strike, Pham had filed an ex parte application to lift the stay on discovery—the stay being one that is imposed by statute once an anti-SLAPP motion is filed. (See § 425.16, subd. (g).)[13] The

---

[12] After briefing was completed, Olivia brought to this court's attention the recent case of *Weeden*, *supra*, 70 Cal.App.5th 269, urging that it had a bearing on the issues of protected activity under the anti-SLAPP statute and the application of the litigation privilege. *Weeden* concerned a lawsuit for quiet title, cancellation of instrument, and slander of title arising out of the defendant's recordation of an abstract of judgment. (*Id.* at p. 280.) The court concluded, inter alia, that the litigation privilege applied to bar the plaintiffs' tort claim for slander of title that was based upon the communicative activity of obtaining an abstract of judgment and creating a judgment lien against the plaintiffs' property by recording the abstract. (*Id.* at p. 293.) *Weeden*, unlike the case here, did not involve (a) a fraudulent transfer claim under the UVTA; (b) a claim arising out of noncommunicative conduct, namely, the alleged fraudulent transfer of property; or (c) the use of allegedly sham judicial proceedings to accomplish such noncommunicative conduct. *Weeden* is not helpful to our analysis in this case.

[13] "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." (§ 425.16, subd. (g).) Under that statute, it is in the trial court's discretion to grant or deny a motion for discovery. (See *Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 618.)

court recited further that the court denied the ex parte application, but it permitted Pham to file a motion for discovery to be heard with Olivia's motion to strike and demurrer. Pham in fact filed the motion, but because the court denied Olivia's motion to strike, it denied Pham's motion for discovery on the ground that it was moot.[14] Additionally, although Pham filed written objections to Olivia's evidence, the court did not rule on the objections in its order.[15]

In light of our reversal of the court's order denying the special motion to strike, it is appropriate to remand the matter to the trial court so that it may consider the evidence presented on the second prong of the special motion to strike—including ruling on any objections to evidence asserted by the parties—to determine whether Pham has satisfied her burden of establishing that her claims have minimal merit. In conjunction therewith, and prior to addressing the second prong of the anti-SLAPP motion, the trial court should consider and rule on the merits of Pham's motion for discovery, and it should consider any additional papers that it may permit the parties to file in connection with the motion to strike.

### 3. *Collateral Attack on Amended Judgment*

Olivia contends that the claims asserted by Pham in the Complaint represent an improper collateral attack on the amended judgment obtained in the Olivia/An proceeding through the execution and entry of the 2014 Stipulated Order. Olivia argues that Pham

---

[14] The ex parte application, order denying the application, and the motion for discovery are not part of the record before us.

[15] The evidence presented to which Pham objected concerned statements in Olivia's declaration regarding the condition and value of the furniture and personal property that were the subjects of her challenged agreement with An in the 2014 Stipulated Order. Because this evidence was relevant to whether Pham's claims have minimal merit—i.e., the second prong to be considered in addressing Olivia's special motion to strike that the trial court did not address—it is not surprising that the court did not address the objections.

should have either directly attacked the amended judgment or attacked it collaterally by demonstrating that the Superior Court, County of Orange, had no jurisdiction to enter the amended judgment.

Preliminarily, we observe that this argument is not well-developed. It would thus be appropriate for this court to deem the argument forfeited. (See *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 780 [appellate court may deem appellant's undeveloped argument forfeited].)

Further, Olivia's argument appears to run contrary to the nature and purpose of the UVTA. A creditor may assert under the UVTA a claim that a transfer made or obligation occurred is voidable "if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: [¶] (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. [¶] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." (Civ. Code, § 3439.04, subd. (a).)

As held by the California Supreme Court, "The California Legislature has a general policy of protecting creditors from fraudulent transfers, including transfers between spouses. A transfer before dissolution can be set aside as a fraudulent conveyance. [Citations.] A transfer after dissolution can be set aside under the clear terms of the [UVTA]. When the court divides the marital property in the absence of an agreement by the parties, it must divide the property equally [citation], which provides some protection for a creditor of one spouse only. In view of this overall policy of protecting creditors, it is unlikely that the Legislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in [a marital settlement agreement]." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 668 (*Mejia*).) In *Mejia*, a third party brought an independent

.                                                    29

action under the UVTA challenging a marital settlement agreement implementing an alleged fraudulent transfer by the plaintiff's debtor. That marital settlement agreement had been merged into a final judgment in the dissolution proceeding. (*Id.* at p. 662.) Although the Court in *Mejia* did not address the argument that the plaintiff's UVTA action was barred because it was an improper collateral attack on the judgment in the dissolution proceeding, the holding in *Mejia* quoted above suggests that the argument would have been unavailing.[16]

But issues concerning fraudulent conveyance claims are questions of fact. "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer. [Citations.]" (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 834.) And "[w]hether a transfer is made with fraudulent intent and whether a transferee acted in good faith . . . are questions of fact. [Citation.]" (*Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 40.) Accordingly, since we remand the case for the court to consider the evidentiary showing made by the parties to assess whether Pham has met her burden of showing that her case has minimal merit, we will defer to the trial court a determination as to whether any or all of the claims are, as asserted by Olivia, an improper collateral attack on the amended judgment.

### III. DISPOSITION

The order denying appellant Olivia Nguyen's special motion to strike respondent Thuy Pham's first amended complaint pursuant to the special motion to strike under section 425.16 is reversed. The case is remanded to the trial court for further consideration of the second prong of the motion to strike. The court shall, in conjunction with the motion to strike, first consider the merits of respondent's motion to lift the discovery stay. In

---

[16] Additionally, it would be anomalous to permit a creditor to bring an independent UVTA action to challenge an alleged fraudulent conveyance in a stand-alone marital settlement, while barring such an action where that agreement was merged in a judgment based upon the latter constituting a collateral attack on the judgment.

addressing the second prong of the motion to strike, the court shall consider the evidence presented to determine whether Pham's claims have minimal merit, and it shall consider Olivia's collateral attack argument. In the event the court determines that Pham's claims based upon the fraudulent conveyance of property have minimal merit and that the claims are not barred as an improper collateral attack on a judgment, then the litigation privilege defense asserted by Olivia will not act as a bar to Pham's claims under the second step of the analysis of the special motion to strike.

Each party shall bear her respective costs on appeal.

_____
BAMATTRE-MANOUKIAN, J.




WE CONCUR:






_____
ELIA, ACTING P.J.






_____
DANNER, J.




*Pham v. Nguyen*
**H047433**