[No. G034987. Fourth Dist., Div. Three. Nov. 7, 2005.]

FLORA C. NAVARRO, Plaintiff and Respondent, v.
IHOP PROPERTIES, INC., Defendant and Appellant.

**COUNSEL**

Lewis Brisbois Bisgaard & Smith, Kenneth C. Feldman and Barry Zoller for Defendant and Appellant.

Borchard & Baur, Thomas J. Borchard and Rosa Kwong for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—IHOP Properties, Inc. appeals an order denying its special motion to strike Flora C. Navarro's complaint pursuant to Code of Civil Procedure section 425.16. We find that the special motion to strike should have been granted because Navarro's claim arises from litigation activity and she is barred from prevailing on the merits. We therefore reverse and remand with directions for the trial court to dismiss the complaint.

## I

## FACTS

On August 14, 2003, IHOP Properties, Inc. (IHOP) filed suit against Navarro for unlawful detainer of an International House of Pancakes restaurant in Irvine. IHOP alleged that Navarro had breached a sublease and related franchise documents and that she was more than $23,000 in arrears on rent. The unlawful detainer complaint requested possession of the premises, a declaration that Navarro had forfeited her rights under the sublease, and damages.

According to Navarro, she contacted IHOP after the unlawful detainer complaint was filed to discuss her attempts to sell the franchise, but IHOP would not discuss the matter with her unless she agreed to settle the unlawful detainer lawsuit and stipulate to judgment. The stipulated judgment was filed on August 21, 2003. The judgment was for possession and $66,671.04 in damages, but execution was stayed if Navarro met certain requirements, including timely payments and financial reporting. If Navarro defaulted more than twice, or defaulted once and failed to cure the default, then the judgment could be enforced immediately.

Further, Navarro was to have until December 12, 2003, to attempt to sell her franchise and other rights. Under their prior agreements, IHOP's approval for such a sale was required, and IHOP agreed to review any proposed sale "without undue delay." If Navarro was unable to sell the franchise by December 12, 2003, then IHOP would be able to enforce the judgment and Navarro's rights under the prior agreements would terminate. Finally, she agreed to waive any right to appeal from or attack the judgment, directly or collaterally, and to release IHOP from all claims related to the parties' prior agreements.

On October 29, 2003, IHOP filed an application for writ of possession. Navarro filed an ex parte application to stay enforcement of the writ of execution, arguing that IHOP had failed to process a potential buyer. She also claimed that an accountant had determined that IHOP was not owed the money it asserted. The stay was specifically requested to allow an accounting.

IHOP opposed the application, arguing the request for an accounting was an attempt to revisit the stipulation, which stated the exact amount Navarro owed to IHOP. IHOP stated that Navarro had repeatedly defaulted since the stipulation by failing to pay as specified and submitting checks that were returned for insufficient funds. The notices of default and copies of the checks were submitted as evidence. Default notices were sent on August 28, September 25, October 9, and October 14.

The court denied Navarro's application and IHOP pursued execution of the judgment. According to Navarro, she heard nothing more from IHOP about her proposed sale of the franchise until January 2003, when it rejected her proposed buyer.

In July 2004, Navarro filed her initial complaint in the instant action, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The fraud cause of action alleged that IHOP had falsely promised to consider offers to buy her franchise rights "without undue delay" but intentionally delayed consideration of purchase offers until the deadline had passed.

IHOP demurred and moved to strike the complaint pursuant to Code of Civil Procedure section 425.16. (All statutory references are to the Code of Civil Procedure unless other noted.) The trial court found that section 425.17 did not apply, denied the motion to strike under section 425.16, and sustained the demurrer with leave to amend. The portion of the order denying the motion to strike is the order from which IHOP now appeals. Navarro's first amended complaint, which was filed in the interim, pled only the single cause of action for fraud.

## II

## DISCUSSION

*Jurisdiction and Standard of Review*

An order denying a special motion to strike is subject to immediate appeal. (§ 425.16, subd. (j).) We exercise independent judgment to determine whether the motion to strike should have been granted. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1].)

*The Anti-SLAPP Statute*

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446].) In response to the threat such lawsuits posed to the important public policy of open and free participation in the democratic process, the Legislature adopted section 425.16 (the anti-SLAPP statute): "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

The statute defines " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

We engage in a two-part analysis to determine the propriety of granting or denying a special motion to strike under the anti-SLAPP statute. First, we decide whether the causes of action arise from acts in furtherance of the defendant's right of free speech or right of petition. "A defendant meets

this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58].) If the defendant has made such a showing, we then determine if the plaintiff has demonstrated a reasonable probability of prevailing. (§ 425.16, subd. (b)(1).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

*The Applicability of Section 425.17*

Section 425.17 was adopted in 2003 to address "a disturbing abuse of Section 425.16 . . . ." (§ 425.17, subd. (a).) Section 425.17 exempted certain lawsuits from the ambit of the anti-SLAPP statute. Therefore, it raises a threshold issue, and we address it prior to examining the applicability of section 425.16.

As relevant here, section 425.17 states: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, *or* the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c), italics added.)

Although Navarro immediately jumps to a lengthy discussion of the nature of commercial speech, we need not go that far to conclude that section 425.17 does not apply here. The speech at issue—IHOP's allegedly false promises to process potential buyers of Navarro's franchise rights "without undue delay"—does not meet the requirements of section 425.17, subdivision (c). Such promises do not qualify as "representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, *or* the statement or conduct was made in the course of delivering the person's goods or services." (§ 425.17, subd. (c), italics added.)

A promise is not a representation of fact, but an agreement to take certain actions in the future. Nor was the statement, contrary to Navarro's arguments, made in the course of delivering goods or services. It was made in the context of settling a dispute. Navarro argues "[IHOP] did sell Dr. Navarro something. It sold her its services or a promise to continue providing her with its services which included the function of promptly processing proposed sale of the franchise." Navarro acknowledges that if this case was "a personal-injury matter arising from an auto collision that concluded in a settlement and one of the drivers later sues for fraudulent inducement of the settlement, a different analysis would ensue."

We disagree. The settlement here was not a "sale" any more than it would be in the context of the hypothetical auto collision. The parties were already in a commercial relationship. IHOP sued Navarro for unlawful detainer because, allegedly, she had not kept her part of the relevant agreements. IHOP's promises were not in the course of selling or delivering Navarro any further goods or services, but to settle the matter and protect its own interests. Put another way, any promises or statements made were to induce settlement of a lawsuit, not during a commercial transaction or an attempt to induce a commercial transaction. Thus, section 425.17, by its plain language, does not apply to this type of factual situation. Unsurprisingly, Navarro is unable to point to any case law supporting the contention that promises made to induce settlement of a lawsuit are "commercial speech," and we decline to extend the statute's reach in that direction. We therefore agree with the trial court that section 425.17 does not apply here.

### Protected Activity

Having determined that section 425.17 does not apply, we move to the two-pronged analysis under section 425.16. First, we decide whether the challenged cause of action arises from acts in furtherance of the defendant's right of free speech or right of petition under one of the four categories set forth in section 425.16, subdivision (e). (*Braun v. Chronicle Publishing Co.*, *supra*, 52 Cal.App.4th at p. 1043.) The category suggested by the facts in this case is "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" or "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(1), (2).)

The statements alleged here are IHOP's promises in exchange for stipulation of judgment. She alleges in her complaint that "IHOP obtained the entry of the judgment in the [unlawful detainer] action through extrinsic fraud: IHOP never intended to review [the proposed transaction between Navarro

and her buyer] 'without undue delay,' and that its true intention was to stall and thereby prevent plaintiff from exercising her right to present an alternative purchaser until the expiration of the deadline for plaintiff to obtain approval of any potential sale of her interest, so that IHOP could regain possession of the Store or for some other reason inconsistent with the good-faith performance of the agreement embodied by the Stipulation."

In *Navellier v. Sletten, supra,* 29 Cal.4th 82, the plaintiffs sued the defendant for fraud, alleging the defendant had misrepresented his intent to be bound by a release in a previous federal action. Plaintiffs also alleged the defendant had committed breach of contract by filing counterclaims in the federal action. (*Id.* at pp. 85–86.) The California Supreme Court held that the anti-SLAPP statute applied to these claims. The defendant's negotiation and execution of the release involved "statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)), specifically, the federal district court. Similarly, the defendant's arguments respecting the release's validity in federal court were "statement[s] or writing[s] made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) Finally, the federal counterclaims were obviously "statement[s] or writing[s] made before a . . . judicial proceeding." (*Ibid.*) Thus, the defendant's activities, including those which allegedly constituted fraud, "fall[] squarely within the plain language of the anti-SLAPP statute." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 90.)

Similarly, in *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174], the Court of Appeal held that a claim for fraud and other torts resulted from negotiating a stipulated settlement. (*Id.* at p. 1420.) Therefore, the claims arose under the anti- SLAPP statute because they were "made in connection with an issue under consideration or review by a . . . judicial body" within the meaning of section 425.16, subdivision (e)(2).

Navarro's claim is similar to both of these cases, concerning allegedly fraudulent statements within the context of negotiating the stipulated judgment. Indeed, we find no basis at all for distinguishing it, and Navarro offers none. Her only argument that the anti-SLAPP statute does not apply is based on section 425.17, which we have already rejected.

■ We shall briefly address two other contentions offered by Navarro. First, she argues that the anti-SLAPP statute should not apply to the statements at issue here, because they are not a matter of public interest. This is without merit. When the defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e) (speech or petitioning before a legislative, executive, judicial, or other official proceeding, or statements made in connection with an issue under review or consideration by an official

body), the defendant is not required to independently demonstrate that the matter is a "public issue" within the statute's meaning. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ Second, Navarro argues that the anti-SLAPP statute was enacted to protect individual activists against "large private interest plaintiffs," and therefore, a corporation cannot avail itself of the anti-SLAPP statute's protections. This proposition has no basis in the statute itself and has been squarely rejected by other courts, and we do the same. (See, e.g., *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794].) Thus, we find that this case falls within the ambit of the anti-SLAPP statute, meeting the statute's first prong, and we turn to the second prong, Navarro's likelihood of succeeding on the merits of her case.

*Likelihood of Prevailing*

■ Once we determine that the anti-SLAPP statute applies, the burden then shifts to the plaintiff to demonstrate a probability of prevailing. (*Dowling v. Zimmerman, supra,* 85 Cal.App.4th at p. 1417.) If the plaintiff does so, the motion to strike under the anti-SLAPP statute must be denied. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

■ IHOP offers several persuasive reasons why Navarro cannot prevail on the merits; we will discuss only two, each of which provides an independent basis for concluding that Navarro cannot prevail. The first reason is that Navarro's claim is barred by the litigation privilege, set forth in Civil Code section 47, subdivision (b), which holds as privileged statements made in any "judicial proceeding."

Navarro asserts, without authority, that the privilege is limited to circumstances in which "the party, against whom the privilege is asserted, had an opportunity to investigate, conduct discovery or otherwise examine witnesses and the evidence during the litigation, but failed to do so." The relevant case law shows otherwise. Numerous courts have held that statements relating to settlements also fall within the privilege, including those made during settlement negotiations. (*Joseph A. Saunders, P.C. v. Weissburg & Aronson*

(1999) 74 Cal.App.4th 869, 875 [87 Cal.Rptr.2d 405] ["absolutely privileged"]; see also *Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 842 [184 Cal.Rptr. 317]; *O'Neil v. Cunningham* (1981) 118 Cal.App.3d 466, 477 [173 Cal.Rptr. 422].) Navarro dismisses these cases by stating that they did not relate to claims for fraud, yet they relate to statements during settlement agreements and are therefore relevant here.

■ Navarro claims, however, that the litigation privilege does not apply in cases of "extrinsic fraud," yet she misapprehends its nature. Extrinsic fraud does not occur, as Navarro suggests, when one party lies to another, leading to litigation. "Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067 [41 Cal.Rptr.2d 797, 41 Cal.Rptr.2d 797].) "By contrast, fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so. [Citation.]" (*Ibid.*) The type of fraud Navarro alleges is intrinsic. She claims she was lied to about IHOP's intentions with regard to the settlement terms, and had the opportunity to negotiate terms that would have been more favorable (e.g., not dependent on IHOP's intent) or to reject the settlement altogether. She was not prevented from participating in the proceedings.

Moreover, even when extrinsic fraud can be demonstrated, the aggrieved party may seek to set aside the judgment, but none of the cases Navarro cites support the contention that a separate action for damages may be pursued. (*Estate of McGuigan* (2000) 83 Cal.App.4th 639 [99 Cal.Rptr.2d 887] [set-aside of judgment in probate matter]; *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824 [102 Cal.Rptr.2d 743] [marital dissolution].) Indeed, *Kuehn v. Kuehn* explicitly rejects Navarro's argument: " '[T]he absolute litigation privilege of Civil Code section 47, subdivision (b), bars derivative tort actions and "applies to all torts other than malicious prosecution, including fraud, negligence and negligent misrepresentation. [Citation.]" [Citations.]' " (*Id.* at p. 834.)

The case law supports IHOP's contention that statements made during settlement negotiations, such as those at issue here, are protected by the litigation privilege. Therefore, Navarro's cause of action for fraud is barred.

In addition to the litigation privilege, Navarro's complaint would also fail because she does not establish a prima facie case. Navarro's cause of action for fraud falls under the false promise prong of Civil Code section 1710, which includes in the definition of fraud: "A promise, made without any intention of performing it." Here, as noted above, the alleged promises relate to IHOP's processing of any offers to sell the franchise. IHOP, according to Navarro, made this promise without any intent to perform it, did not perform it, and therefore, she suffered damages.

Navarro has a serious causation problem. She ignores the extensive evidence set forth below relating to her default under the terms of the stipulated judgment. The evidence shows that she was in default almost immediately, as the first default letter from IHOP was dated August 28, just weeks after the stipulated judgment was entered. Another default letter followed on September 25. Under the terms of the stipulated judgment, after the second default, "Defendant shall no longer be entitled to receive a written notice of default and shall no longer have any opportunity to cure such further default, and Plaintiff shall thereafter be entitled, without additional notice to Defendant, to execute forthwith on the Judgment." The judgment was for possession of the premises and the sum of $66,671.04. By October 9, Navarro had defaulted again, and although under no obligation to do so, IHOP sent Navarro a letter giving her another opportunity to meet her obligations. She had not done so by October 14, when IHOP informed her of its intent to enforce the judgment.

Navarro offers nothing to dispute this compelling evidence that any losses she suffered were not as a result of any false promise by IHOP, but her own failure to meet the obligations set forth in the stipulated judgment. Although she states she "vigorously disputed and continues to dispute IHOP's accusations that she defaulted in her reporting, accounting, and payment obligations," there is no evidence in support of this contention. Moreover, she states that even if she did default, she was nonetheless entitled to sell the franchise until December 12.

Not so. Under the terms of the stipulation, IHOP was entitled to execute on the judgment in the event of default. Navarro's obligation to make the scheduled payments and reports to IHOP was therefore a condition precedent to her ability to sell the franchise instead of immediately losing possession pursuant to the judgment. Thus, IHOP's alleged false promise did not result in the loss of the business; her default accomplished that well in advance of the December deadline. Navarro's default was complete by no later than October 14, and she had no rights to the premises thereafter because of her default. Even if IHOP's false promise induced Navarro to enter into the

stipulation, it did not cause her damages, and therefore Navarro has not demonstrated that she has a prima facie case for the false promise species of fraud.

### III

### DISPOSITION

The portion of the order denying IHOP's motion to strike is reversed, and the trial court is instructed to enter a new order dismissing Navarro's first amended complaint. Pursuant to section 425.16, subdivision (c), as prevailing defendant, IHOP is entitled to recover its attorney fees and costs at both the trial court and on appeal, and the trial court is directed to determine the appropriate amount thereof.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied December 2, 2005, and respondent's petition for review by the Supreme Court was denied February 1, 2006, S140232. Chin, J., did not participate therein.