Filed 5/14/26  Norrenberg v. Indus Investments CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SVEN NORRENBERG et al., | B345791 |
| Cross-complainants and Appellants, | (Los Angeles County Super. Ct. No. 22STCV29165) |
| v. | |
| INDUS INVESTMENTS, INC. et al., | |
| Cross-defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Reversed with directions.

The Matevosyan Law Firm and Arman Matevosyan for Cross-complainants and Appellants.

Timothy D. McGonigle; Greenberg Traurig and Scott D. Bertzyk for Cross-defendants and Appellants.

_____

## INTRODUCTION

Indus Investments, Inc., Royal Lush, LLC, and Tehmina Adaya (collectively, Indus) filed this action against Armond Khosrovyan, Sven Norrenberg, and Tetiana Demchak. Khosrovyan, Norrenberg, and Demchak filed a cross-complaint, and Indus filed a special motion to strike under Code of Civil Procedure section 425.16 (commonly known as an anti-SLAPP motion).[1] The trial court ruled five of the cross-complaint's nine causes of action arose from protected activity and were barred by the litigation privilege. Indus argues the court should have stricken the entire cross-complaint; Norrenberg and Demchak argue the court should have denied Indus's special motion to strike entirely.[2] We agree with Indus that all of Khosrovyan, Norrenberg, and Demchak's causes of action arose from protected activity and were barred by the litigation privilege. Therefore, we reverse the order and direct the trial court to enter a new order granting Indus's special motion to strike.

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Khosrovyan did not appeal from the order or file a respondent's brief.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Indus Sues Khosrovyan, Norrenberg, and Demchak*

Indus Investments operated a hotel in Santa Monica, and Royal Lush operated the hotel's food and beverage business. Tehmina Adaya was Indus's president and chief executive officer.

On April 2, 2021 Indus Investments and Royal Lush paid Norrenberg, a former hotel employee, $450,000 to settle Norrenberg's "claims relating to his employment," including claims "he was slandered" by Adaya, as evidenced by a recording of Adaya calling Norrenberg "'Nazi boy.'"  Indus Investments and Royal Lush also paid Demchak, Norrenberg's wife, $50,000 to settle her claim she suffered a miscarriage.  Khosrovyan, the hotel's general manager, signed the settlement agreement on behalf of Indus Investments and Royal Lush.

On September 7, 2022 Indus filed this action against Khosrovyan, Norrenberg, and Demchak.  Indus alleged Khosrovyan "encouraged (and conspired with)" Norrenberg "to fabricate evidence in order to bring fraudulent employment claims against the Hotel and . . . obtained a portion of the fraudulently obtained settlement proceeds."  Indus alleged Khosrovyan created the "phony" "'Nazi boy'" recording.  Indus alleged that Khosrovyan pretended to represent Indus's interests in negotiating with Norrenberg and Demchak, but that Khosrovyan simultaneously advised Norrenberg and Demchak "how to leverage their false claims to obtain the maximum possible settlement."  Indus alleged that Khosrovyan "intentionally sidelined" the hotel's attorneys, that he "rushed through a pre-litigation settlement," and that he "obtained a secret kickback" from Norrenberg and Demchak.

3

Indus further alleged Khosrovyan "grossly abused his position of trust as the Hotel's General Manager by treating the Hotel as his personal fiefdom and by engaging in a shocking multi-year scheme of fraud and theft from the Hotel."  Indus alleged Khosrovyan's scheme included conspiring with another hotel employee "to present fraudulent employment claims"; paying "'phantom'" employees; obtaining "secret kickbacks" from contractors; stealing furniture, meals, and "expensive alcohol and fine wines"; and charging personal expenses to the hotel.

Indus asserted causes of action for breach of fiduciary duty, fraud, conversion, conspiracy to commit fraud, conspiracy to commit conversion, restitution and unjust enrichment, violation of Penal Code sections 496 and 502, and intentional infliction of emotional distress.  Indus sought damages, rescission of the settlement agreement, "restitution of the proceeds," and "restitution of any kickbacks received by Khosrovyan."

B.     *Khosrovyan, Norrenberg, and Demchak File a Cross-complaint*

On October 31, 2024 Khosrovyan, Norrenberg, and Demchak filed a cross-complaint against Indus.  They alleged: "In consideration for the [settlement agreement] and pursuant to [its] terms," Norrenberg and Demchak "destroyed valuable evidence."  Khosrovyan, Norrenberg, and Demchak alleged that, "[i]nstead of honoring the terms of" the April 2021 settlement agreement, Indus "in September 2022 in bad faith fraudulently and falsely claimed . . . Khosrovyan acted without [Indus's] knowledge and outside the scope of his employment in negotiating and ultimately entering into" the settlement agreement and "began claiming Mr. Khosrovyan conspired and

4

colluded with Mr. Norrenberg and Ms. Demchak for them to receive $500,000.00 . . . . " Khosrovyan, Norrenberg, and Demchak alleged Indus was "attempting to void the valid and enforceable Agreement through various illegitimate means" and demanding they "cancel the Agreement and return the $500,000.00 that secured settlement." Khosrovyan, Norrenberg, and Demchak asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and restitution, intentional misrepresentation, negligent misrepresentation, promissory fraud, injunctive relief, declaratory relief, and intentional infliction of emotional distress. They sought, among other things, a "judicial determination" the settlement agreement was "valid and enforceable."

C.    *The Trial Court Grants in Part Indus's Special Motion To Strike Under Section 425.16*

On March 5, 2025 Indus filed a special motion to strike Khosrovyan, Norrenberg, and Demchak's cross-complaint. Indus argued that the cross-complaint was based on Indus's complaint and that all of Khosrovyan, Norrenberg, and Demchak's causes of action were barred by the litigation privilege.

The trial court granted Indus's special motion to strike in part. On the first step of the analysis under section 425.16, the court ruled the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment were based on Indus "making allegedly false statements in the Complaint and attempting to void the agreement through this action—litigation conduct that is protected." The court ruled the causes of action for injunctive

5

and declaratory relief also arose from protected activity because Indus disputed the settlement agreement's validity and sought to cancel it "by way of their Complaint." On the second step of the analysis, the court ruled Khosrovyan, Norrenberg, and Demchak did not meet their burden to show a probability of success on their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and injunctive and declaratory relief because those causes of action were barred by the litigation privilege.

The court ruled the remaining causes of action for intentional misrepresentation, negligent misrepresentation, and promissory fraud did not arise from protected activity. The court ruled those causes of action arose "from the parties executing the settlement agreement on April 2, 2021 and [Khosrovyan, Norrenberg, and Demchak's] reliance on the representations made at that time," not from Indus's filing of the complaint. The court ruled that, because the cause of action for intentional infliction of emotional distress "could include by incorporation the alleged fraudulent inducement when entering into the settlement agreement," it did not arise from protected activity. The court did not reach the second step of the analysis on those causes of action. Indus, Norrenberg, and Demchak timely appealed from the trial court's order.

## DISCUSSION

A. *Section 425.16*

Section 425.16, subdivision (b)(1), states a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under

6

the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16, subdivision (e), provides an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." "Section 425.16 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.'" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642; see *Clapkin v. Levin* (2026) 119 Cal.App.5th 222, 231.)

Courts follow a two-step process in evaluating special motions to strike under section 425.16. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; see *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) We review de novo an order granting or denying a special motion to strike under

7

section 425.16.  (*Bonni*, at p. 1009; *Clapkin v. Levin*, *supra*, 119 Cal.App.5th at p. 231.)

> B.     *All of Khosrovyan, Norrenberg and Demchak's Causes of Action Arose from Protected Activity*

> > 1.     *The Trial Court Did Not Err in Granting Indus's Motion To Strike the Causes of Action Arising from Indus's Act of Filing the Complaint*

Section 425.16 protects "communicative conduct such as the filing, funding, and prosecution of a civil action."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1024 ["filing of a lawsuit is an exercise of the First Amendment right to petition the government"]; *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 97 ["Protected activity includes the filing and prosecution of lawsuits."]; *Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 27 ["'"filing of lawsuits is an aspect of the First Amendment right of petition" [citation], and thus is a protected activity under'" section 425.16].)  A cross-complaint may be subject to a special motion to strike if it alleges "a cause of action arising from the plaintiff's act of filing the complaint itself."  (*Joslin v. Third Laguna Hills Mutual* (2020) 49 Cal.App.5th 366, 371-372.)

The trial court correctly ruled the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief arose from Indus's conduct in filing the complaint against Khosrovyan, Norrenberg,

and Demchak.[3]  In their cause of action for breach of contract Khosrovyan, Norrenberg, and Demchak alleged that, "[o]n or about September 7, 2022, [Indus] materially breached" the settlement agreement by falsely claiming Khosrovyan acted without Indus's knowledge and outside the scope of his employment in negotiating and entering into the agreement and by "claiming Mr. Khosrovyan conspired and colluded with Mr. Norrenberg and Ms. Demchak for them to receive $500,000.00 . . . ."  Khosrovyan, Norrenberg, and Demchak further alleged Indus was "attempting to void the valid and enforceable Agreement through various illegitimate means," "demanding [Norrenberg and Demchak] cancel the Agreement and return the $500,000.00 that secured settlement," and refusing "to honor the terms of the Agreement."  Khosrovyan, Norrenberg, and Demchak made nearly identical allegations in their cause of action for breach of the implied covenant of good faith and fair dealing.  Similarly, in their cause of action for declaratory relief Khosrovyan, Norrenberg, and Demchak sought a judicial determination of their "rights and duties" under the

---

[3]     Khosrovyan, Norrenberg, and Demchak also asserted causes of action for unjust enrichment and injunctive relief. Unjust enrichment, however, is not a cause of action, but "'[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient.'" (*City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 477.)  Similarly, injunctive relief is an equitable remedy, not a cause of action. (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 663; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1361.)  "A remedy must have a cause of action to support it." (*Timothy W.*, at p. 663.)

9

settlement agreement and a declaration the agreement "is valid and enforceable."

The actions by Indus that supply the elements of Khosrovyan, Norrenberg, and Demchak's causes of action are all based on allegations from Indus's complaint, where Indus alleged Khosrovyan colluded with Norrenberg and Demchak to obtain a fraudulent settlement, sought to rescind the settlement agreement, and sought restitution of the $500,000. (See *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 ["the protected activity must 'supply elements of the challenged claim'"].) Khosrovyan, Norrenberg, and Demchak even alleged Indus's breach of the settlement agreement occurred on September 7, 2022—the date Indus filed its complaint. Khosrovyan, Norrenberg, and Demchak did not allege Indus sought to void the settlement agreement in any communication other than the complaint, and Indus submitted declarations— which Khosrovyan, Norrenberg, and Demchak did not dispute— stating no one from Indus communicated with Khosrovyan, Norrenberg, or Demchak in September 2022. (See § 425.16, subd. (b)(2) [in ruling on a special motion to strike under section 425.16, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"]; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887 [on the first step on the analysis under section 425.16 "courts must look beyond the pleadings to consider any party evidentiary submissions as well"].) But for Indus's act of filing the complaint, there would be no basis for Khosrovyan, Norrenberg, and Demchak's causes of action. (See *Meads v. Driggers* (2025) 114 Cal.App.5th 28, 37 ["'but for' the [cross-defendants'] claim for judicial dissolution, there would be

10

no basis for the cross-complaint, and the cross-complaint 'therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong'"]; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 ["but for the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis"].)

Norrenberg and Demchak's arguments their causes of action did not arise from Indus's complaint are meritless. First, Norrenberg and Demchak argue the "sole basis" for the trial court's ruling some of their causes of action arose from protected activity was that Indus filed its complaint on September 7, 2022, the same date on which Khosrovyan, Norrenberg, and Demchak alleged Indus breached the contract. Norrenberg and Demchak argue the "law and overwhelming evidence here demonstrate the *date itself* that [Indus] filed their underlying complaint is *not* protected activity under the Anti-SLAPP Statute." But the trial court did not rule the date was protected activity; it ruled what happened on that date—Indus's filing of the complaint—was protected activity.

Second, Norrenberg and Demchak argue their cross-complaint asserted "compulsory claims that arise out of the same transactions and occurrences" as Indus's causes of action for breach of contract and unjust enrichment. Khosrovyan, Norrenberg, and Demchak rely on *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, where the court stated a "compulsory cross-complaint on a 'related cause of action' against the plaintiff [citation] would rarely, if ever, qualify as a SLAPP suit arising from petition activity." (*Id.* at p. 651.) The court in *Church of Scientology*, however, did not state a compulsory cross-complaint never arises from protected activity. To the contrary,

11

the court stated a cross-complaint is subject to a special motion to strike if it "arises out of the litigation process itself," including "the plaintiff's act of filing the complaint against the defendant and the subsequent litigation." (*Ibid.*; see *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1373 ["Some, but not all, cross-complaints are subject to anti-SLAPP motions."].) Because the claims in Khosrovyan, Norrenberg, and Demchak's cross-complaint arose out of Indus's act of filing the complaint, their causes of action were based on protected activity. (See *Cocoa AJ Holdings, LLC v. Schneider* (2025) 115 Cal.App.5th 980, 994 [cross-complaint alleging the cross-defendant "violated the settlement agreement's release of claims" by filing "several additional lawsuits against" the cross-complainants arose from protected activity]; *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408 [cross-complaint alleging the cross-defendant "breached the settlement agreement by filing a complaint against" cross-complainant arose from protected activity].)

Third, Norrenberg and Demchak argue their cross-complaint was "based on overwhelming evidence outside of the Complaint," such as text messages and the settlement agreement. Norrenberg and Demchak argue the text messages in the days leading up to the settlement on April 2, 2021 among Adaya, Khosrovyan, and a lawyer regarding the terms of the settlement with Norrenberg and Demchak "demonstrate[ ] Adaya's knowledge and ascent [*sic*] into the Subject Settlement and Release Agreement." Though the text messages and the settlement agreement are evidence that in April 2021 Adaya intended Indus Investments to be bound by the settlement agreement (a fact Adaya and Indus Investments do not dispute), Khosrovyan, Norrenberg, and Demchak's allegations Indus

12

breached the settlement agreement by repudiating it and trying to rescind it were based on Indus's act of filing the complaint. In other words, without relying on Indus's protected activity of filing the complaint, Khosrovyan, Norrenberg, and Demchak cannot establish the element of breach. (See *Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 892 ["If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the . . . analysis has been carried."].)

Fourth, Norrenberg and Demchak summarize several cases involving special motions to strike and assert, without analysis, that "[u]nder the overwhelming legal authority above, the Cross-Complaint is a straightforward and private business dispute for [Indus's] undisputable [*sic*] anticipatory breach of contract and fraud (and related causes of action)." Some (but not all) of the cases Norrenberg and Demchak cite involve claims a party breached a settlement agreement, but that is where the similarity ends. For example, Norrenberg and Demchak cite *Mundy v. Lenc*, *supra*, 203 Cal.App.4th 1401, where the cross-complainant alleged the cross-defendant breached a settlement agreement by filing a complaint asserting a previously released cause of action. (*Id.* at p. 1405.) Norrenberg and Demchak state that in *Mundy* "the trial court properly denied appellant's special motion to strike respondent's breach of contract claim," but at step one the court in *Mundy* held the breach of contract claim arose from protected activity. (*Id.* at p. 1408.) Only at step two did the court in *Mundy* conclude the cross-complainant was likely to succeed on the merits because the cross-complainant introduced evidence showing the cross-defendant could have asserted the new claim in the previous action. (*Id.* at p. 1409.)

13

Norrenberg and Demchak cite *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, but that case does not help them. In *City of Alhambra* a former city employee who was president of the firefighters' union settled a civil rights action against the city. (*Id.* at p. 1304.) In the settlement agreement the employee agreed that, for a five-year period, he would not participate or represent city employees in matters involving the city. (*Ibid.*) The city sued the employee after he participated in a union meeting where "he advocated that [union] members join a planned demonstration" against the city and, while wearing his union shirt, participated in a protest by city employees against the city. (*Ibid.*) The court in *City of Alhambra* affirmed the trial court's order denying the employee's special motion to strike the city's cause of action for declaratory relief, holding that cause of action did not arise from the employee's protected activity: "The City did not sue [the employee] because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exists as to the scope and validity of that contract." (*Id.* at p. 1308.) Here, in contrast, Khosrovyan, Norrenberg, and Demchak sued Indus for breaching the settlement agreement by filing a complaint, which is indisputably protected activity.

Norrenberg and Demchak also argue the "facts in the case at bar here directly trace those in *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.*" (2008) 164 Cal.App.4th 1108. They do not. In *Applied Business Software* the parties to a copyright infringement action entered into a settlement agreement requiring the defendant to provide the plaintiff with a certification stating the defendant had returned or destroyed all

14

copies of the plaintiff's software. (*Id.* at p. 1112.) The defendant did not provide a satisfactory certification, and the plaintiff sued the defendant for breach of the settlement agreement. (*Id.* at pp. 1113-1114.) The court in *Applied Business Software* affirmed the trial court's order denying the defendant's special motion to strike, holding the plaintiff's complaint was based on the "defendant's alleged failure to provide the certification called for in the settlement agreement, and defendant's alleged use of plaintiff's software after the time set out in the settlement agreement for ceasing use of it. Neither of those alleged actions by the defendant can reasonably be said to have been taken by defendant in furtherance of its right of petition or free speech in connection with a public issue. Therefore, it cannot reasonably be said that plaintiff's complaint arises from/is based on protected activities undertaken by defendant." (*Id.* at p. 1117.) Here, however, Khosrovyan, Norrenberg, and Demchak's cross-complaint was based on Indus's act of filing a complaint disavowing and seeking to rescind the settlement agreement, not Indus's failure to perform an obligation under the agreement, such as Indus's obligation to pay Norrenberg and Demchak $500,000.[4]

---

[4]    Norrenberg and Demchak also argue that "Adaya never attested to Adaya's speech being 'chilled'" and that "there is no evidence that the Cross-Complaint was filed to prevent [Indus] from pursuing protected activity." Indus, however, did not have to prove either that Khosrovyan, Norrenberg, and Demchak intended to chill its speech or that its (or Adaya's) speech was in fact chilled. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 75 [section 425.16 does not include an "intent-to-chill proof requirement" or a "chilling-effect proof requirement"]; *Navellier v. Sletten, supra*, 29 Cal.4th at p. 88 [same].)

2. *The Trial Court Erred in Denying Indus's Motion To Strike the Causes of Action Arising from Settlement Negotiations*

The trial court ruled Khosrovyan, Norrenberg, and Demchak's causes of action for intentional misrepresentation, negligent misrepresentation, promissory fraud, and intentional infliction of emotional distress did not arise from protected activity. The court ruled those causes of action arose "from the parties executing the settlement agreement on April 2, 2021 and [Khosrovyan, Norrenberg, and Demchak's] reliance on the representations made at that time," not from Indus's filing of its complaint. Indus argues "settlement negotiations are protected activity" under section 425.16. Indus is correct.

"Settlement negotiations while a suit is pending are . . . protected; they involve communications in connection with a matter pending before or under consideration by an official body, and so fall within the scope of section 425.16, subdivision (e)(2)." (*Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1024; see *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963-964 ["settlement negotiations are within the scope of section 425.16"].) Settlement negotiations "preceding the filing of any suit" are likewise protected activities under section 425.16. (*Bonni*, at p. 1024; see *Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1023 ["communications sent in anticipation of litigation . . . constitute legitimate speech or petitioning activity protected under" section 425.16]; *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405, 1413 ["communications that are preparatory to or in anticipation of litigation are protected under section 425.16, subdivision (e)(2), even though they occur before litigation is actually pending"].)

16

In their causes of action for intentional misrepresentation, negligent misrepresentation, and promissory fraud Khosrovyan, Norrenberg, and Demchak alleged that Indus made false representations to induce Norrenberg and Demchak to enter into the settlement agreement, that in consideration for Indus's payment of $500,000 Norrenberg and Demchak "destroyed valuable evidence in their favor," and that "the true facts" at the time of the agreement were that Indus intended to attempt to recover the $500,000 later. Khosrovyan, Norrenberg, and Demchak alleged Indus made the false representations on April 2, 2021, the day the parties signed the settlement agreement. Because Indus's misrepresentations occurred during settlement negotiations in anticipation of litigation,[5] Khosrovyan, Norrenberg, and Demchak's causes of action were based on protected activity. (See *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1026 [allegations a hospital fraudulently induced a physician to enter into a settlement agreement and then breached the agreement were based on protected activity]; *Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 90 ["negotiation, execution, and repudiation" of a release were protected under section 425.16, subdivision (e)(2)]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123 ["[c]ommunications in the course of settlement negotiations are protected activity within the scope of section 425.16," even "against allegations of fraudulent promises made during the settlement process"];

---

[5] Though no litigation was pending on April 2, 2021, Indus anticipated Norrenberg would soon file a lawsuit: In a text message dated March 27, 2021, Khosrovyan told Indus's lawyer Norrenberg was threatening to file this action unless Indus paid him $450,000.

17

*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842 [defendant's "allegedly fraudulent statements within the context of negotiating the stipulated judgment" were protected activity].)[6]

      C.     *Khosrovyan, Norrenberg, and Demchak Did Not Show a Probability of Success Because Their Causes of Action Are Barred by the Litigation Privilege*

At the second step of the analysis under section 425.16 "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Indus argues Khosrovyan, Norrenberg, and Demchak did not show a probability of success because the litigation privilege bars all of their causes of action. Indus is correct again.

"The litigation privilege is 'relevant to the second step in the [section 425.16] analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.'" (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 415; see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) "'"A plaintiff cannot establish a probability of prevailing if the

---

[6] In their cause of action for intentional infliction of emotional distress, Khosrovyan, Norrenberg, and Demchak incorporated these allegations and alleged that the "conduct set forth hereinabove was extreme and outrageous" and that Indus "abused the employment discretion provided, and engaged in conduct intended to cause extreme embarrassment to" Norrenberg and Demchak. Because the intentional infliction of emotional distress cause of action was derivative of the previous causes of action, it too was based on the complaint, the settlement negotiations, or both, all of which were protected activity.

litigation privilege precludes a defendant's liability on the claims.""'" (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 382; see *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 115.) Under Civil Code section 47, subdivision (b), a "privileged publication or broadcast is one made" in any "judicial proceeding." The litigation privilege applies "'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241; accord, *Geragos v. Abelyan*, *supra*, 88 Cal.App.5th at p. 1031.) The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1057; see *Flatley*, at p. 322 [the "privilege has also been held to apply to 'statements made prior to the filing of a lawsuit'"].) The litigation privilege "is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.'" (*Flatley*, at p. 322; see *Rusheen*, at p. 1063.)

Khosrovyan, Norrenberg, and Demchak's causes of action for breach of the implied covenant of good faith and fair dealing and declaratory relief were based on Indus's act of filing the complaint. The trial court correctly ruled the litigation privilege bars those causes of action. (See *Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1249 ["We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."]; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1195 ["we can

19

imagine few communicative acts more clearly within the scope of the [litigation] privilege than . . . filing the complaint and subsequent pleadings in the litigation"]; see also *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1058 [the "'[p]leadings and process in a case are generally viewed as privileged communications'"]; *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1139 [same].)

The trial court also correctly ruled the litigation privilege bars Khosrovyan, Norrenberg, and Demchak's cause of action for breach of contract. "'[W]hether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege.'" (*McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1169; see *Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492.) Those policies are to "'ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation.'" (*McNair*, at p. 1169; see *Wentland*, at p. 1492.) Khosrovyan, Norrenberg, and Demchak's breach of contract cause of action was based on Indus's filing of the complaint—the same communicative conduct on which Khosrovyan, Norrenberg, and Demchak based their causes of action for breach of the implied covenant of good faith and fair dealing and declaratory relief. Applying the litigation privilege to the breach of contract cause of action "furthers the policy of allowing access to the courts without fear of harassing derivative actions." (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1498; see *id.* at p. 1497 [litigation privilege barred a breach of contract cause of action where the "same communicative conduct formed the basis for the tort and breach of contract causes of action"].)

20

The litigation privilege also bars Khosrovyan, Norrenberg, and Demchak's causes of action for intentional misrepresentation, negligent misrepresentation, promissory fraud, and intentional infliction of emotional distress because those causes of action were based on Indus's alleged false representations that induced Norrenberg and Demchak to settle their threatened lawsuit and destroy evidence.  Statements "relating to settlements also fall within the privilege, including those made during settlement negotiations."  (*Navarro v. IHOP Properties, Inc.*, *supra*, 134 Cal.App.4th at p. 843; see *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th at p. 970 [litigation privilege "'applies to statements made by counsel during settlement negotiations'"]; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 24 ["the alleged misrepresentation was made during a lawsuit to induce settlement and therefore falls within the litigation privilege"]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1422 [statements by counsel while negotiating a settlement were protected by the litigation privilege].)

The privilege protects Indus's statements during settlement negotiations because, though Norrenberg had not yet sued Indus, he had threatened to do so.  Prelitigation communications are privileged if they "relate[ ] to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1251; accord, *Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1290; see *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1024 [""communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation

21

privilege"""].)  Six days before Indus allegedly made the misrepresentations, Khosrovyan sent a text message to Indus's attorney stating Norrenberg "wants 450 k nothing less or he files the lawsuits Monday."

Norrenberg and Demchak rely on an exception to the litigation privilege for "any communication made in furtherance of an act of intentional destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence."  (Civ. Code, § 47, subd. (b)(2).)  Norrenberg and Demchak argue that, under this exception, "the substance of [Indus's] correspondence are [*sic*] not privileged."  There are several problems with Norrenberg and Demchak's argument.  First, even if Indus's correspondence (text messages) are not protected by the litigation privilege, they do not supply the elements of any of Norrenberg and Demchak's causes of action.  Second, the text messages do not say anything about destroying or altering evidence.  Norrenberg and Demchak cite to 20 pages of text messages between Khosrovyan, Adaya, and a lawyer discussing whether the settlement agreement required Norrenberg to keep the agreement confidential, whether the payment should be by check or money order, who should be named in the release, and whether the hotel's insurer had agreed to pay the settlement amount less the deductible.  Nothing about destroying evidence.[7]

_____

[7]      Norrenberg and Demchak also argue the trial court "impermissibly weighed the evidence."  It did not.  Norrenberg and Demchak quote a portion of the trial court's order where the court rejected their argument, made at the hearing on Indus's special motion to strike, that "evidence in the form of the settlement agreement and non-privileged text messages" showed Khosrovyan, Norrenberg, and Demchak would prevail on the

22

Third, to the extent Norrenberg and Demchak argue that the text messages show Adaya participated in negotiating the settlement and that Norrenberg and Demchak destroyed the "'Nazi boy' recording" in "consideration for the [settlement agreement and release] and pursuant to its terms," Norrenberg and Demchak do not identify anything in the "terms" of the settlement agreement about destroying evidence. Instead, Norrenberg and Demchak cite only their cross-complaint (and the trial court's order citing Khosrovyan, Norrenberg, and Demchak's cross-complaint). Nor do Norrenberg and Demchak identify any other evidence Indus asked, let alone required, Norrenberg and Demchak to destroy the recording.[8]

Norrenberg and Demchak argue the litigation privilege does not apply because their causes of action were based, not on Indus's privileged communications, but on Indus's "underlying course of conduct evidenced by the communication." "It is true that [the litigation privilege] does not apply to *noncommunicative* conduct and does not bar the *evidentiary* use of privileged communications in otherwise allowable actions." (*Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1298.) But Norrenberg and Demchak admit their causes of action were based on "Adaya's inducement of" the "destruction of

---

merits. The court stated the settlement agreement and the text messages were "irrelevant to whether the litigation privilege applies."

[8] Similarly, Norrenberg and Demchak assert Indus admitted it "enacted a course of conduct to destroy that vital evidence to prevent its use by" Khosrovyan, Norrenberg, and Demchak. In support of this accusation Norrenberg and Demchak cite only their own discovery responses.

23

valuable evidence," which occurred during privileged settlement negotiations. Norrenberg and Demchak do not identify any actionable non-privileged misrepresentations or conduct by Indus. (See *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 815 [litigation privileged barred causes of action where the plaintiffs did "not identify *any* of defendants' conduct that was *not* a communication made in a judicial proceeding (or prior thereto) to achieve the objects of the litigation"]; *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th at p. 971 [litigation privilege applied where the plaintiff's causes of action against the defendant were "based on his *communications . . .* regarding settlement of the cross-complaint," and that was "the nature of his alleged participation in the fraudulent scheme"]; *Doctors' Co. Ins. Services*, at p. 1299 ["[c]haracterizing [the defendant's] conduct as 'destruction' of evidence [did] not alter the fact that the 'destruction' was accomplished entirely by statements made in the litigation," which brought the plaintiffs' action "within the bounds of the privilege"].)

Norrenberg and Demchak argue the litigation privilege does not apply because "there was no imminent litigation." Though their argument is a difficult to follow, Norrenberg and Demchak appear to argue that in April 2021, when Indus settled Norrenberg's threatened employment action, Indus did not anticipate Khosrovyan, Norrenberg, and Demchak would file their cross-complaint several years later. Norrenberg and Demchak argue "it is impossible for correspondence that pre-dates the [April 2021 settlement agreement] to be for the subsequent breach of that yet-to-be-entered agreement." Norrenberg and Demchak do not dispute Indus's text messages and settlement negotiations regarding Norrenberg's employment

24

claims related to litigation that, as far as Indus could tell, Norrenberg and Demchak contemplated in good faith and seriously considered filing within days. Therefore, Indus's communications were protected by the litigation privilege. (See *Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1251.) Norrenberg and Demchak do not cite any authority for a rule that would limit the litigation privilege to communications regarding the current litigation.

Finally, Norrenberg and Demchak argue the trial court should have denied Indus's special motion to strike based on "public policy." Citing the goal of section 425.16 to eliminate "'meritless or retaliatory litigation at an early stage of the proceedings,'" Norrenberg and Demchak state the "metaphorical ship has sailed for 'early' termination of this case." Norrenberg and Demchak recap the four-year history of their dispute with Indus, beginning in August 2020, when Norrenberg threatened employment litigation, and ending in October 2024, when Khosrovyan, Norrenberg, and Demchak filed their cross-complaint. Norrenberg and Demchak misconstrue "early stage of the proceedings" to mean an early stage in any dispute between the parties, rather than an early stage in the proceedings on the pleading targeted by the motion to strike.[9]

---

[9] Throughout their reply brief Norrenberg and Demchak accuse Indus and its counsel of being untruthful, without citing any evidence supporting their accusation. Nine times Norrenberg and Demchak state "the truth matters," or "the truth matters, but apparently not to [Indus]." Norrenberg and Demchak also state: "Repeating a lie does not make the lie true, it simply makes one a liar." And Norrenberg and Demchak assert Indus "initiated this lawsuit by lying to the Superior Court" by alleging in its complaint the settlement agreement

25

## DISPOSITION

The order is reversed.  The trial court is directed to vacate its order and enter a new order granting the special motion to strike under section 425.16.  Indus Investments, Royal Lush, and Adaya are to recover their costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

---

"was entered into without Ms. Adaya's consent or knowledge" (which Indus did not allege).  Norrenberg and Demchak's "[a]d hominem attacks and other invective detract from counsel's legal arguments, signal inappropriate personal embroilment in the dispute, and indicate an inability to engage in the reasoned analysis the courts need and counsel's clients deserve." (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 667; see *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1537 ["Zeal and vigor in the representation of clients are commendable.  So are civility, courtesy, and cooperation.  They are not mutually exclusive."].)